Submitted March 13, 2013, affirmed January 22, petition for review denied July 9, 2015 (357 Or 550)

**ARLEN PORTER SMITH,**
*Petitioner,*

*v.*

**BOARD OF PAROLE AND
POST-PRISON SUPERVISION,**
*Respondent.*

Board of Parole and Post-Prison Supervision
A146861

343 P3d 245

Arlen Porter Smith filed the briefs *pro se.*

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.

HASELTON, C. J.

## HASELTON, C. J.

The issue presented in this case is whether an individual who is subject to the parole consideration provisions for a dangerous offender, ORS 144.228, has a right to subpoena witnesses for that parole consideration hearing. The Board of Parole and Post-Prison Supervision (board) concluded that petitioner had no such right, and issued an order, Board Action Form (BAF) 16, quashing two subpoenas that petitioner's attorney had issued to two individuals. Petitioner seeks review of Administrative Review Response (ARR) 12, in which the board denied petitioner's request for relief from BAF 16. Petitioner also seeks review of ARR 13 in which the board denied his request for relief from BAF 17, concerning the board's deferral of his parole consideration date for another two years. We conclude that petitioner had no right to subpoena witnesses in his parole consideration hearing, and affirm.

Petitioner was convicted in 1984 for the offenses for which he is incarcerated and has appeared before the board for parole consideration hearings every two years, beginning in 2001. Because petitioner was sentenced as a dangerous offender, ORS 161.725, ORS 161.735, and ORS 161.737, his parole consideration hearings follow the provisions of ORS 144.228. Under ORS 144.228, the board is directed to give petitioner a release date if the board "finds the prisoner no longer dangerous or finds that the prisoner remains dangerous but can be adequately controlled with supervision and mental health treatment." ORS 144.228(1)(b)(A). ORS 144.228 sets forth the nature of the hearing that the board is to conduct in making that determination. Subsection (2) provides, in pertinent part:

"For the parole consideration hearing, the board shall cause to be brought before it and consider all information regarding such person. The information shall include:

"(a)   The written report of the examining psychiatrist or psychologist which shall contain all the facts necessary to assist the State Board of Parole and Post-Prison Supervision in making its determination. The report of the examining psychiatrist or psychologist shall be made within two months of the date of its consideration; and

"(b)   A written report to be made by the executive officer of the Department of Corrections institution in which the person has been confined. The executive officer's report shall contain:

"(A)   A detailed account of the person's conduct while confined, all infractions of rules and discipline, all punishment meted out to the person and the circumstances connected therewith, as well as the extent to which the person has responded to the efforts made in the institution to improve the person's mental and moral condition.

"(B)   A statement as to the person's present attitude toward society, toward the sentencing judge, toward the prosecuting district attorney, toward the arresting police officer and toward the person's previous criminal career.

"(C)   The work and program record of the person while in or under the supervision of the Department of Corrections. The program history shall include a summary of any psychological or substance abuse treatment and other activities that will assist the board in understanding the psychological adjustment and social skills and habits of the person and that will assist the board in determining the likelihood for successful community reentry."

The parole consideration hearing at issue in this case was set for July 8, 2009. On June 9, 2009, Dr. Templeman, a clinical psychologist who was appointed to examine petitioner prior to his parole consideration hearing, wrote a letter to the board, explaining that petitioner had twice refused to participate in a psychological evaluation with him.[1] "The problem," Templeman stated, "seems to be that [petitioner] insists on an audio recording of the entire interview and evaluation. * * * I do not allow audio or video * * * recording of my psychological interviews or testing sessions[.]"[2]

On June 17, petitioner, through his attorney, issued subpoenas *duces tecum* to Templeman and Mills, the Superintendent of the Two Rivers Correctional Institution.

---

[1] Prior to any ORS 144.228 hearing, a clinical psychologist or psychiatrist is required to meet with the inmate in order to give the inmate a "complete mental and psychiatric or psychological examination," and report the findings and conclusions of that examination to the board. *See* ORS 144.226(1).

[2] Petitioner's attorney had written the board requesting that Templeman's interview with petitioner be recorded, and the board denied that request in a letter dated June 9, 2009.

The subpoenas ordered, *inter alia*, that Templeman and Mills appear at petitioner's parole consideration hearing on July 8, and bring all records pertaining to the reports that each made regarding petitioner.[3] Prior to the hearing, the board sent petitioner's attorney a letter, notifying her that the board was aware of the subpoenas. The board further stated in the letter that it "lack[ed] authority to authorize or enforce subpoenas in hearings of this kind[.]" At petitioner's July 8 hearing, the board referred again to the subpoenas:

"[T]urn to the subpoenas that [petitioner's] attorney has issued in the Board's name on your behalf. Those subpoenas were issued for records and for personal appearance at this hearing to [Mills and Templeman]. The Board has received the information * * *—that those were issued. We have the copies that were submitted by [petitioner's] attorney, and also we had received information from Dr. Templeman. The Board is going to order that these subpoenas, and any others issued for this hearing, are quashed and disallowed on the ground that they are not authorized by law. And the Board further orders that the persons to whom they are directed are not required to produce records or appear, pursuant to those subpoenas. So that's going to be our decision about the subpoenas."

Nevertheless, the board continued petitioner's parole consideration hearing for a month, in order for the board to receive more documents that petitioner wished to produce, and in order for petitioner to "pursue * * * efforts to have these subpoenas enforced." Its written order, BAF 16, did not indicate that the hearing's continuance was for the purpose of allowing petitioner further time to enforce the subpoenas. It simply stated that the subpoenas were quashed.

On August 12, 2009, the board held another hearing to consider petitioner's parole. Petitioner's attorney advised the court that petitioner was in the process of filing a motion in the circuit court against Templeman and Mills in order to compel them to testify at the parole consideration

---

[3] The subpoena to Templeman ordered him to also bring "[t]he current or most recent personal service contract between [Templeman] and [the board,] * * * [and a]ny and all records * * * pertaining to directions or instructions concerning the fulfillment of the aforementioned contract and the preparation of psychological reports."

proceeding or be held in contempt,[4] and petitioner requested the board to continue the parole consideration hearing while the other action was being pursued. In BAF 17, the board denied that request, noting that it could "reopen the hearing and proceed under whatever court direction we had" at a later date. It then concluded that, because petitioner had refused to meet with Templeman, the board "lack[ed] the information required to find that the severe emotional disturbance that makes [petitioner] dangerous is no longer present[,]" and deferred petitioner's next parole consideration date to September 5, 2011.[5] BAF 17. Petitioner sought review of both orders, and the board denied his requested relief in both orders in ARR 12 and 13.

Petitioner seeks review of ARR 12 and 13, requesting that we vacate BAF 16 and 17, "with directions to allow the petitioner to subpoena and question any witnesses submitting written materials for the Board's consideration and use as evidence." He argues that his attorney was entitled to issue subpoenas to Templeman and Mills under ORS 183.445. He further argues that two other statutes, ORS 144.315 and ORS 183.413, grant him the right to subpoena witnesses, and that he has "due process" rights to compel witnesses to testify at his hearing, under both state and federal constitutional provisions. The board responds that there are no statutory or constitutional bases for a right to subpoena witnesses to an ORS 144.228 parole consideration hearing; that neither the board, nor petitioner's attorney, had authority to issue the subpoenas; and, thus, that the board correctly quashed the subpoenas. Consequently, the board asserts that its deferral of petitioner's parole consideration was not in error.

We begin with an examination of each of the statutes that petitioner asserts grant him a right to subpoena

---

[4] Petitioner's attorney explained that the circuit court had received the motion, but there was an issue as to whether the court would waive the filing fee, and therefore the motion had yet to be filed.

[5] Petitioner subsequently filed a Motion for Issuance of Order to Show Cause (Remedial Contempt Proceeding) against both Templeman and Mills. The circuit court dismissed that matter after concluding that petitioner was not legally entitled to subpoena witnesses to the parole consideration hearing. That dismissal is the subject of our decision in *Smith v. Mills*, 268 Or App 454, 342 P3d 1034 (2015).

witnesses to an ORS 144.228 parole consideration hearing. *See State v. Algeo*, 354 Or 236, 242, 311 P3d 865 (2013) ("In accordance with our usual approach, we take up [the] statutory argument before we consider [the] constitutional argument."). Our role in statutory construction is to determine the legislature's intent, beginning with the text and context of each statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We address each statute separately, beginning with ORS 183.445.

ORS 183.445, upon which petitioner bases his attorney's authority to issue subpoenas, provides:

"(1)   In any proceeding before an agency not subject to ORS 183.440 *in which a party is entitled to have subpoenas issued for the appearance of witnesses on behalf of the party,* a subpoena may be issued by an attorney of record of the party, subscribed by the signature of the attorney. A subpoena issued by an attorney of record may be enforced in the same manner as a subpoena issued by the agency.

"(2)   In any proceeding before an agency not subject to ORS 183.440 *in which a party is entitled to have subpoenas issued by the agency to compel the appearance of witnesses on behalf of the party,* the agency may issue subpoenas on its own motion."

(Emphasis added).

ORS 183.440[6]—providing the authority to subpoena witnesses in a contested case under the Administrative

_____

[6] ORS 183.440 provides:

"(1) An agency may issue subpoenas on its own motion in a contested case. In addition, an agency or hearing officer in a contested case may issue subpoenas upon the request of a party to a contested case upon a showing of general relevance and reasonable scope of the evidence sought. A party entitled to have witnesses on behalf of the party may have subpoenas issued by an attorney of record of the party, subscribed by the signature of the attorney. Witnesses appearing pursuant to subpoena, other than the parties or officers or employees of the agency, shall receive fees and mileage as prescribed by law for witnesses in ORS 44.415(2).

"(2) If any person fails to comply with any subpoena so issued or any party or witness refuses to testify on any matters on which the party or witness may be lawfully interrogated, the judge of the circuit court of any county, on the application of the hearing officer, the agency or the party requesting the issuance of or issuing the subpoena, shall compel obedience by proceedings for contempt as in the case of disobedience of the requirements of a subpoena issued from such court or a refusal to testify therein."

Procedures Act (APA)—does not apply to the board. *See* ORS 183.315 (explicitly so stating).[7] Thus, ORS 183.445 is, in fact, apposite to these circumstances. Nevertheless, to the extent that petitioner posits that the provisions of ORS 183.445 create a right to subpoena witnesses, that proposition is irreconcilable with the statutory text—and, in particular, the language emphasized above. Consistent with that express qualifying language, the issuance of subpoenas pursuant to ORS 183.445 is conditioned on a party being otherwise entitled to have subpoenas issued. Thus, ORS 183.445 is not substantive, as creating an entitlement to subpoena witnesses; rather, it is procedural, as effectuating an entitlement grounded in some other source of authority.

Petitioner also invokes ORS 144.315. That statute provides:

"Evidence may be received in proceedings conducted by the State Board of Parole and Post-Prison Supervision even though inadmissible under rules of evidence applicable to court procedure and the board shall establish procedures to regulate and provide for the nature and extent of the proofs and evidence and method of taking and furnishing the same in order to afford the inmate a reasonable opportunity for a fair hearing. The procedures shall include the means of determining good cause not to allow confrontation of witnesses or disclosure of the identity of informants who would be subject to risk of harm if their identity is disclosed."

Petitioner asserts that ORS 144.315 requires the board to establish means in all of its hearings by which an individual can subpoena witnesses. Specifically, petitioner contends that (1) the statutory requirement that the board establish procedures "affording the inmate a reasonable opportunity for a fair hearing" necessarily encompasses the ability to subpoena witnesses and (2) the statutory requirement of procedures for "determining good cause not to allow confrontation of witnesses" presumes, by negative implication, the right to (otherwise) subpoena witnesses.

---

[7] ORS 183.315(1) provides, in part:

"The provisions of * * * 183.440 * * * do not apply to * * * State Board of Parole and Post-Prison Supervision[.]"

The board remonstrates that nothing in the statutory text refers to the issuance of subpoenas, much less authorizes inmates to issue subpoenas in all board proceedings—and to so construe ORS 144.315 would be to "insert into [the] statute * * * what has been omitted" in contravention of ORS 174.010. Further, to so construe ORS 144.315 would be contextually irreconcilable with other, related, statutes governing procedures in other types of board hearings.

We agree with the board. To be sure, the board's textual argument is, by itself, far from dispositive, because matters not explicitly included in a statute's text may be fairly, even necessarily, encompassed within a generalized mandate. Nevertheless, in this instance, the combination of statutory text and context is conclusive.

Specifically, with respect to context, ORS 144.315 was enacted in 1973 as part of omnibus legislation pertaining to board procedures, Senate Bill (SB) 379. Or Laws 1973, ch 694. Two other features of that omnibus bill are especially pertinent. The first was the revision to ORS 183.315(1), which, as noted above, *see* 268 Or App at 462-63, excluded the board from the General Administrative Procedures Act subpoena provision, ORS 183.440. *See* Or Laws 1973, ch 694, § 1. The second pertinent concurrently enacted feature was two new provisions, pertaining exclusively to parole revocation hearings, Oregon Laws 1973, chapter 694, sections 13 and 15 (SB 379 (1973), §§ 13 and 15), which are codified at ORS 144.343 and ORS 144.347.[8]

ORS 144.343, which prescribes procedures for parole revocation hearings, expressly states that the parolee shall

---

[8] The aspects of those statutes that are germane to our consideration have not been materially revised since 1973.

SB 379 was enacted, in part, in response to *Morrissey v. Brewer*, 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972). The Court held in *Morrissey* that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires a state to provide certain procedural safeguards before revoking an individual's parole. *Id.* at 482-84. Those safeguards include the parolee's right to have a hearing before parole was revoked, to be given notice of the hearing and what parole violations were allegedly committed, and the right of the parolee to appear at the hearing, present evidence, and to have available for questioning any "person who has given adverse information on which parole revocation is to be based[,]" unless the "hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed[.]" *Id.* at 486-87.

be given written notice of, *inter alia,* "[t]he parolee's right to subpoena witnesses under ORS 144.347." ORS 144.343(3)(e). ORS 144.347, in turn, authorizes the issuance of subpoenas "[u]pon request of any party to the hearing provided in ORS 144.343." ORS 144.347(1), (2).[9]

Thus, at the same time that it enacted ORS 144.315—which does not refer to subpoenas—the legislature: (1) specifically exempted the board from the APA's generalized subpoena authorization; and (2) enacted provisions that do expressly authorize the issuance of subpoenas in the particularized context of parole *revocation* proceedings. To construe ORS 144.315 as petitioner urges—that is, as conferring a plenary entitlement to the issuance of subpoenas in all board proceedings—would contradict the former and render the latter gratuitous. Such a reading would, effectively, render ORS 144.315 to be the functional equivalent of ORS 183.440 for board proceedings, nullifying the "carve out" for the board pursuant to ORS 183.315(1). Similarly, if ORS 144.315 embodied an omnibus entitlement to subpoena witnesses, the specific provision, pursuant to ORS 144.343 and ORS 144.347, of such authority with respect to parole revocation proceedings would be superfluous. *See* ORS 174.010 (in construing statutes, "where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all"); *State v. Stamper,* 197 Or App 413, 418, 106 P3d 172 (2005) ("As a general rule, we assume that the legislature did not intend any portion of its enactment to be meaningless surplusage."). Further, ORS 144.343 and ORS 144.347 confirm, contemporaneously and contextually, that, when the legislature intended to provide for authority to subpoena witnesses in board proceedings,

---

[9] ORS 144.347 provides, in part:

"(1) Upon request of any party to the hearing provided in ORS 144.343 and upon a proper showing of the general relevance and reasonable scope of the testimony to be offered, the board or its designated representatives shall issue subpoenas requiring the attendance and testimony of witnesses. In any case, the board, on its own motion, may issue subpoenas requiring the attendance and testimony of witnesses.

"(2) Upon request of any party to the hearing provided in ORS 144.343 and upon a proper showing of the general relevance and reasonable scope of the documentary or physical evidence sought, the board or its designated representative shall issue subpoenas duces tecum. In any case, the board, on its own motion, may issue subpoenas duces tecum."

it knew how to do so. It did not so provide in ORS 144.315. *Cf. Colby v. Gunson*, 224 Or App 666, 671-72, 199 P3d 350 (2008) (addressing proper application, and limitations, of *expressio unius est exclusio alterius* maxim).[10]

Finally, petitioner contends that ORS 183.413 confers a right to subpoena. That statute provides, in part:

"(1) The Legislative Assembly finds that parties to a contested case hearing have a right to be informed as to the procedures by which contested cases are heard by state agencies, their rights in hearings before state agencies, the import and effect of hearings before state agencies and their rights and remedies with respect to actions taken by state agencies. Accordingly, it is the purpose of subsections (2) and (3) of this section to set forth certain requirements of state agencies so that parties to contested case hearings shall be fully informed as to these matters when exercising their rights before state agencies.

"(2) Prior to the commencement of a contested case hearing before any agency including those agencies identified in ORS 183.315, the agency shall serve personally or by mail a written notice to each party to the hearing that includes the following:

"(a) The time and place of the hearing.

"(b) A statement of the authority and jurisdiction under which the hearing is to be held.

"(c) A statement that generally identifies the issues to be considered at the hearing.

"(d) A statement indicating that the party may be represented by counsel and that legal aid organizations may be able to assist a party with limited financial resources.

"(e) *A statement that the party has the right to respond to all issues properly before the presiding officer and present evidence and witnesses on those issues.*

"(f) A statement indicating whether discovery is permitted and, if so, how discovery may be requested.

---

[10] In addition to ORS 183.440, the legislature has explicitly provided authority to subpoena witnesses in a variety of other contexts. *See, e.g.,* ORS 136.567 (issuance of subpoenas by defendants in criminal trials); ORS 426.100(1) (issuance of subpoenas by individuals subject to involuntary commitment procedures).

"(g) A general description of the hearing procedure including the order of presentation of evidence, what kinds of evidence are admissible, whether objections may be made to the introduction of evidence and what kind of objections may be made and an explanation of the burdens of proof or burdens of going forward with the evidence."

(Emphasis added.)

Petitioner observes, correctly, that the board is subject to ORS 183.413, because that statute, unlike ORS 183.440, is not among those from whose application the board is explicitly exempted pursuant to ORS 183.315(1). In an argument roughly paralleling his invocation of ORS 144.315, petitioner contends that ORS 183.413(2)(e), and specifically its reference to "the right to respond to all issues *** and present evidence and witnesses on those issues," necessarily implies the right to compel witnesses to appear and testify at parole consideration hearings. That contention fails for many of the same, or analogous, reasons that contradicted petitioner's construction of ORS 144.315.

We note, first, that the statutory text pertains solely to the contents of a *notice* of hearing—statutorily pre-scribed content that does not refer to subpoenas[11]—it does not purport to confer substantive procedural rights. Indeed, the substantive source of authority to subpoena witnesses in contested cases—the same universe to which the notice requirements of ORS 183.413 apply—is ORS 183.440, which is (again) *explicitly inapplicable* to board proceedings.

In a related contextual sense, petitioner's proposed construction of the language "present evidence and wit-nesses," which was added to ORS 183.413(2)(e) in 2007, Or Laws 2007, ch 288, § 1, over 30 years after the provisions of SB 379 (1973), would either (at worst) effectively negate or (at best) render superfluous the provisions of that legis-lation circumscribing entitlement to subpoena witnesses in board proceedings, with specific reference to parole revoca-tion hearings. *Cf. State ex rel Huddleston v. Sawyer*, 324 Or 597, 604-05, 932 P2d 1145 (1997) ("Repeal by implication is

---

[11] Again, when the legislature intends to prescribe that a notice of hearing include the right to subpoena witnesses, it knows how to do so explicitly. *See, e.g.,* ORS 144.343(3)(e).

not favored. It must be established by plain, unavoidable, and irreconcilable repugnancy." (Internal quotation marks and citations omitted.)).[12] The statutory text in context is conclusive: ORS 183.413 does not confer an entitlement to subpoena witnesses in parole consideration hearings.[13]

Finally, petitioner argues that the board violated his "due process" rights under Article I, section 10, of the Oregon Constitution[14] and the Fourteenth Amendment to the United States Constitution.[15] We summarily reject petitioner's state constitutional argument: It is axiomatic that Article I, section 10, "is not a due process clause." *State v. Wagner*, 305 Or 115, 146, 752 P2d 1136 (1988).

Finally, petitioner argues that, under the Fourteenth Amendment, he has a right to a "meaningful opportunity to be heard" and that, in his case, the opportunity to be heard included "the ability to flesh out the record with testimony in addition to documentary evidence[.]" That contention is unavailing.

In *Swarthout v. Cooke*, 562 US 216, 131 S Ct 859, 178 L Ed 2d 732 (2011), the United States Supreme Court was asked to determine whether the respondents, two inmates in the California penitentiary system, were deprived of their due process rights when they were both denied parole. The Court reiterated the two-step inquiry of whether a government action deprives a person of a liberty or property interest:

> "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we

---

[12] *See also Pac. Elevator Co. v. Portland*, 65 Or 349, 387, 133 P 72 (1913) ("The rule that repeals by implication are not favored and will not be held to exist if there is any other reasonable construction is well settled. To repeal a statute by implication, there must be such a positive repugnancy between the provision of the new and the old that they cannot stand together or be harmonized.").

[13] Petitioner identifies no legislative history contradicting our construction of the statutes that he invokes.

[14] Article I, section 10, provides, "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[15] The Fourteenth Amendment provides, in pertinent part, "No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]"

ask whether the procedures followed by the State were constitutionally sufficient."

562 US at 219, 131 S Ct at 861.

The Supreme Court first accepted the Ninth Circuit Court of Appeals' conclusion that California law had created a liberty interest in parole. *Id.* The Court then turned to the question of whether the procedure by which the respondents had been denied parole was constitutionally sufficient. The Court concluded:

"In the context of parole, we have held that the procedures required are minimal. In *Greenhotz*[, *v. Inmates of Neb Penal and Correctional Complex,* 442 US 1, 99 S Ct 2100, 60 L Ed 2d 668 (1979)], we found that a prisoner subject to a parole statute similar to California's *received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.* 442 US at 16. 'The Constitution,' we held, 'does not require more.' *Ibid.* [The two respondents] received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied."

*Swarthout*, 562 US at 220, 131 S Ct at 862 (emphasis added).

Assuming, without deciding, that Oregon has created a liberty interest in petitioner's parole, we conclude that, under the holding of *Swarthout*, the ability to subpoena witnesses is not a requirement for a constitutionally adequate parole consideration hearing under ORS 144.228. Accordingly, the board did not violate petitioner's due process rights under the Fourteenth Amendment when it quashed the subpoenas and deferred petitioner's parole consideration for another two years.[16]

Affirmed.

---

[16] We reject petitioner's other contentions without published discussion.