Submitted February 6, 2015, affirmed March 8, 2017

ARLEN PORTER SMITH,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A153132

391 P3d 807

Arlen Porter Smith filed the briefs *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

**DUNCAN, P. J.**

Petitioner seeks review of a final order by the Board of Parole and Post-Prison Supervision (board) denying him parole and deferring his parole eligibility date for five years. We affirm.

In 1981, petitioner was convicted of four counts of first-degree burglary and one count of second-degree burglary. Petitioner entered the Oregon State Penitentiary and was released on parole in 1984. Eight days after being paroled, petitioner committed new crimes. As a result of those new crimes, petitioner was sentenced to multiple, consecutive terms of incarceration and was found to be a dangerous offender. In the past decade, petitioner's parole release dates have been repeatedly deferred, and those deferrals have been the subject of judicial review. *See, e.g., Smith v. Board of Parole*, 268 Or App 457, 343 P3d 245, *rev den*, 357 Or 550 (2015); *Smith v. Mills*, 268 Or App 454, 342 P3d 1034, *rev den*, 357 Or 550 (2015) (*Mills*).

The board scheduled a parole consideration hearing for June 8, 2011. Petitioner requested a 60-day postponement of that hearing because he wanted additional time to prepare, and the board granted his request. At the hearing, petitioner admitted that he had multiple disciplinary violations, but contended that he had received the disciplinary reports in retaliation or in error. Petitioner also minimized his role in the crimes leading to his incarceration. He admitted that he had not participated in prison programs in the recent past, but he argued that he was a good worker and sought to have evidence introduced to that effect. The board agreed to leave the record open for 14 days to allow petitioner to present written statements from his employers at the prison. Petitioner was able to provide those statements within the allotted time period. Petitioner asserted that if the board granted him parole, he could work for a law office. In support of this plan, petitioner provided statements from various attorneys.[1]

---

[1] Along with these letters and statements, petitioner also sought to introduce a four-page letter "with multiple attached exhibits." However, because petitioner submitted the document after the allotted time period, the board declined to consider it.

In its order, the board, stating that it was "[a]pplying the substantive law in effect at the time of [petitioner's] crime," determined that petitioner has "a mental or emotional disturbance, deficiency, condition, or disorder predisposing [him] to the commission of any crime to a degree rendering [him] a danger to the health or safety of others" and that petitioner "continue[s] to remain a danger." The board denied petitioner parole and deferred his parole consideration for 60 months.

Petitioner requested administrative review of the board's decision, asserting that the board's findings were not supported by substantial evidence, and that the board failed to apply the laws in effect at the time of petitioner's crime of conviction and thereby violated Oregon statutes, the Oregon Constitution, and the United States Constitution. In its administrative review response, the board affirmed its initial determination, finding that petitioner "had a mental or emotional disturbance, deficiency, condition, or disorder predisposing [him] to the commission of any crime to a degree rendering [him] a danger to the health or safety of others[,]" and that petitioner remained "a danger or a menace." Petitioner seeks review of that final order.

In his petition for review, petitioner raises four assignments of error. We write to address petitioner's first, third, and fourth assignments; we reject his second assignment without written discussion.

In his first assignment of error, petitioner asserts that the board "improperly obstructed petitioner's ability to subpoena witnesses to provide testimony at petitioner's parole consideration hearing." We addressed and rejected an identical argument in *Smith*, 268 Or App 457, and we adhere to that opinion here.

In his third assignment of error, petitioner asserts that "[t]he Board's action exceeds its statutory authority and involves intertwined violations of the First Amendment to the United States Constitution and the *ex post facto* prohibitions of both the Oregon and United States Constitutions.[2]"

---

[2] Article I, section 21, of the Oregon Constitution provides, in part, "No *ex-post facto law* *** shall ever be passed[.]" Article I, section 10, of the United

Petitioner's "core complaint is that [the board] altered the procedures and criteria to determine petitioner's parole eligibility to petitioner's disadvantage." We write to address two aspects of that argument: (1) that the board erred in relying on an examination by a psychologist employed by the board rather than on an examination by a psychiatrist appointed by the Superintendent of the Oregon State Hospital, as was required by the versions of ORS 144.226 and ORS 144.228 in force at the time of petitioner's pertinent crime of conviction;[3] and (2) that the board violated *ex post facto* prohibitions when it did not rely exclusively on the conclusion of the mental health examiner in making its decision, and when the board assessed whether petitioner was a *danger* to the health or safety of others rather than a *menace*, as ORS 144.226(2) previously required.[4]

First, petitioner's argument regarding the board's lack of authority to utilize its own psychologist is foreclosed by our case law. In *Alexander v. Board of Parole*, 205 Or App 443, 451, 134 P3d 1055, *rev den*, 341 Or 449 (2006), we recognized that "[the] [p]etitioner is correct that, by their terms, ORS 144.226 (1987) and ORS 144.228(2) (1987) required that persons sentenced as dangerous offenders be evaluated for purposes of parole consideration hearings *by a psychiatrist*," rather than a *psychologist*. (Emphasis added.) Nevertheless, we concluded that the board did not err by

States Constitution provides, in part, "No state shall * * * pass any * * * *ex post facto* Law[.]"

[3] ORS 144.226 (1983), *amended by* Or Laws 1987, ch 320, § 57; Or Laws 1989, ch 790, § 78; Or Laws 1991, ch 318, § 1; Or Laws 1993, ch 334, § 2; Or Laws 2005, ch 481, § 1; Or Laws 2007, ch 70, § 36, provided, in part:

"(1) Any person sentenced under ORS 161.725 and 161.735 as a dangerous offender shall within 60 days prior to the parole consideration hearing under ORS 144.228 and at least every two years thereafter be given a complete physical, mental and psychiatric examination by a *psychiatrist* appointed by the Superintendent of the Oregon State Hospital."

(Emphasis added.)

ORS 144.228(2) (1983), *amended by* Or Laws 1985, ch 283, § 4; Or Laws 1987, ch 320, § 58; Or Laws 1991, ch 318, § 2; Or Laws 1993, ch 334, § 3; Or Laws 2009, ch 660, § 4, provided, in part, "For the parole reconsideration hearing, the board shall * * * consider all information regarding such person[,]" including "[t]he written report of the examining *psychiatrist*." (Emphasis added.)

[4] Petitioner also advances a First Amendment argument, which we reject without published discussion.

using a psychologist to evaluate the petitioner, and that application of the then-current version of ORS 144.226 did not violate the petitioner's due process rights. *Id.*[5] Furthermore, in *Schade v. Board of Parole*, 94 Or App 522, 524-25, 765 P2d 1255 (1988), *rev den*, 307 Or 514 (1989), we held that, regardless of ORS 144.226 and ORS 144.228, the board has independent "authority to order a psychological evaluation as part of its determination of whether a prisoner is 'otherwise eligible' for release on parole" under ORS 144.223(1) (1983), *amended by* Or Laws 1987, ch 320, § 56 and OAR 255-60-005(4) (May 19, 1982),[6] both of which were in force at the time of petitioner's pertinent crime of conviction.

Second, petitioner's argument that the board violated *ex post facto* protections when it did not rely exclusively on the conclusion of the mental health examiner when making its parole determination is also without merit. ORS 144.226(2) (1983), the operative version of the statute at the time of petitioner's crime of conviction, stated that "[t]he [psychiatric evaluation] report shall also contain any other information which the examining psychiatrist believes will *aid* the State Board of Parole in determining whether the examined person is eligible for parole or release." (Emphasis added.) ORS 144.228(2) (1983) provided that, "[f]or the parole consideration hearing, the board shall cause to be brought before it and consider all information regarding such person," including the psychiatrist's written report. As those statutes suggest, the board was not required to rely exclusively on petitioner's psychological evaluation when considering petitioner's parole; rather, the evaluation served as an "aid" to the board's determination, which was to be based

---

[5] In *Alexander*, we reserved the question of whether the board's application of the then-current version of ORS 144.226 violated *ex post facto* protections. 205 Or App at 451 n 2.

[6] ORS 144.223(1) (1983) provided:

"The State Board of Parole may require any prisoner being considered for parole to be examined by a psychiatrist or psychologist before being released on parole."

OAR 255-60-005(4) (May 19, 1982), provided, in relevant part:

"If the record indicates that a psychiatric or psychological condition of severe emotional disturbance, such as to constitute a danger to the health or safety of the community, is present, the Board may order the postponement of the scheduled parole release until a specified future date ***[.]"

on all the information before it. Additionally, the board's final order indicates that, despite petitioner's argument to the contrary, the board evaluated whether petitioner was a "menace."[7] *Weidner v. Armenakis*, 154 Or App 12, 16, 959 P2d 623 (1998) (although board erred in applying current statute, reversal was not warranted because "the Board also made alternative findings under the earlier version of the statute and concluded that plaintiff's release should be deferred under that statutory standard").

In his fourth assignment of error, petitioner argues that the board's order is not supported by substantial evidence, and that it is premised on "the unlawful retroactive application of newly enacted laws." First, petitioner asserts that the evidence before the board was not substantial because the board could not rely on a written psychological report without granting petitioner the opportunity to cross-examine the psychologist. Second, petitioner argues that the board unlawfully extended his next parole consideration hearing, based on the "retroactive application" of ORS 144.228.

Petitioner relies on *Cole/Dinsmore v. DMV*, 336 Or 565, 87 P3d 1120 (2004), for the proposition that a hearsay written report can never rise to the level of substantial evidence. *Cole* does not stand for that proposition. Rather, *Cole* continues the case-specific inquiry established in *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417, 812 P2d 1171 (1991), where the court rejected "any categorical method of determining substantiality." *Cole* merely clarifies that this court engages in a two-step analysis to establish whether hearsay evidence may constitute substantial evidence. Moreover, we have already addressed due process implications of the board's evidentiary practices in *Smith*,

---

[7] Specifically, in its final order, the board stated that the board's order had applied "the substantive rules in effect at the time you committed your crime as well as the applicable laws and procedural rules" to find "that the condition that made you dangerous is not absent or in remission, and that you remain a danger or a menace."

Later, the board explained, "under ORS 144.226 (1983), ORS 144.228(2) (1983), and OAR 255-38-005 (5/19/1982), in effect at the time you committed your crime, the board considered the entire record before it when it made its decision in your case."

268 Or App at 468-69, and we decline to repeat that analysis here.

Next, petitioner argues that the board cannot retroactively apply the 2009 amendments to ORS 144.228(1)(b)(A) to extend petitioner's parole date beyond two years. Petitioner's argument that application of the amended statutes violates the *ex post facto* clauses is unavailing because petitioner has failed to show that "the change in law created a risk that petitioner's term of incarceration would be extended beyond what it otherwise would have been." *Morrison v. Board of Parole*, 277 Or App 861, 866-67, 374 P3d 948, *rev den*, 360 Or 465 (2016) (petitioner failed to show that application of the 2009 amendments would necessarily increase the risk that he would serve a longer sentence).

Affirmed.